# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH  DIVISION

REGINALD LYNCH,    )
            )
  Petitioner,     )
            )
v.           )    CV416-079
            )
HILTON HALL, Warden,   )
and GREGORY C. DOZIER,  )
Commissioner, Georgia   )
Department of Corrections,  )
            )
  Respondents.    )

## REPORT AND RECOMMENDATION

Reginald Lynch, currently incarcerated at Coffee Correctional Facility in Nicholls, Georgia, seeks habeas relief from his Chatham County conviction for murder and possession of a firearm during a crime. Doc. 1 at 1-2; *see also Lynch v. State*, 291 S.E.2d 672 (Ga. 2012) (affirming criminal conviction).   He has exhausted his state court remedies, having challenged the effectiveness of his appellate counsel through a state habeas petition.  Doc. 1 at 3 (after a hearing, the state habeas court denied his petition on the merits); *id.* at 5 & 7 (the Georgia Supreme Court denied his application for a certificate of probable cause to appeal).   He now seeks habeas relief from this Court, *id.* at 5, 7, and

the State opposes.[1]  Doc. 7.

## I.    BACKGROUND

"'Reggie Lynch, shot me.'"  That's what victim Marcus Givens told Detective Dantzler when Givens was discovered lying mortally wounded in an alley.  *Lynch*, 731 S.E.2d at 674.  A second officer, Star Corporal Angel Grant, also heard Givens identify his shooter.  *Id.*  Another witness, Tiffany Davis (a relative of both Lynch and Givens), explained that on the day before, the two men had argued and "Lynch [had] told her that he was going to kill the victim."  *Id.*  Finally, Givens' cousin Leisha Givens testified that Givens had told her at the scene that Lynch had shot him, and that she had seen Lynch leaving the scene of the

---

[1]  The Georgia Department of Corrections, through the Attorney General, seeks to intervene in this case as a respondent.  Doc. 4.  Lynch is incarcerated in Coffee Correctional Facility -- a "private prison" operated under a contract with the Georgia Department of Corrections.  *Id.* at 2.  Rule 2(a) of the Rules Governing § 2254 Cases in the United District Courts provides that applicants in "present custody" seeking habeas relief should name "the state officer having custody of the applicant as respondent."  There "is generally only one proper respondent to a given prisoner's habeas petition," and this is "'the person' with the ability to produce the prisoner' body before the habeas court."  *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004).  When a petitioner is incarcerated and challenges his present physical confinement "the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  *Id.* at 435 (cites omitted).  However, because the warden of CCF is not a state officer, the chief officer in charge of the state penal institution (the Commissioner of the Department of Corrections) is the proper named respondent.  Rule 2(a); *Sanders v. Bennett*, 148 F.2d 19 (D.C. Cir. 1945).  Accordingly, the Commissioner's motion to intervene (doc. 4) is **GRANTED**.

shooting in a white truck. *Id.* Based on that evidence, the Georgia Supreme Court affirmed Lynch's conviction. *Id.*

Lynch argued to the state habeas court that his appellate counsel was deficient for failing to raise on appeal several defects in his trial counsel's performance. Doc. 1 at 3. In particular, appellate counsel should have argued that trial counsel erred in failing to object, on Confrontation Clause grounds, to the testimony that Givens identified Lynch as his shooter. Also, appellate counsel should have challenged trail counsel's failure to object to a detective's testimony that invaded the province of the jury. Doc. 1 at 3. The state habeas court denied relief, and the Georgia Supreme Court denied him a certificate of probable cause. *Id.* (habeas denied); doc. 11-8 (denial of certificate of probable cause).

Lynch retreads those state-habeas grounds in support of his current petition. Doc. 1 at 5, 7. The State opposes, contending that the judgment of the state habeas court[2] is entitled to deference under

---

[2] Currently pending before the United States Supreme Court is the issue of whether the Court must examine the state habeas court's decision or the Georgia Supreme Court's decision denying the certificate of probable cause, for deference purposes. *See Wilson v. Warden*, 834 F.3d 1227 (11th Cir. 2016) (holding the Georgia Supreme Court's denial was a decision on the merits for deference purposes), *cert. granted sub nom. Winston v. Sellers*, 137 S.Ct. 1203 (2017). Regardless of the outcome of *Wilson*,

28 U.S.C. § 2254(d).  Doc. 7-1 at 4.

## II.   ANALYSIS

### A.   Applicable Standards

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) bars federal courts from granting habeas relief to a state petitioner on a claim that was adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"AEDPA's standard is intentionally difficult to meet." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (internal quotes and cites omitted). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond

---

the Court may look to the state habeas court's decision for the purpose of § 2254 deference: "[b]ecause it does not matter to the result, and to avoid any further complications if the United States Supreme Court disagrees with [the] *Wilson* decision," the case will rely on "the more state-trial-court focused approach in applying § 2254(d)." *Butts v. Warden*, 850 F.3d 1201, 1204 (11th Cir. 2017).

any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *id.* at 102-03 (federal habeas review exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."); *see also White v. Woodall*, 572 U.S. __, 134 S. Ct. 1697, 1702 (2014) (the "unreasonable application" of clearly established federal law under § 2254(d)(1) "must be objectively unreasonable, not merely wrong; even clear error will not suffice."); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (same).

As to the "facts" prong, the inquiry focuses not on whether "the state court's determination was incorrect but whether that determination was unreasonable -- a substantially higher threshold." *Shriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) (it is not sufficient that "the federal habeas court would have reached a different conclusion in the first instance." Rather, the state court's decision must be "objectively unreasonable"). State factual findings have been found "unreasonable" under § 2254(d)(2) when the direction of the evidence, viewed cumulatively, was "too powerful to conclude anything but [the petitioner's factual

claim],'" *Miller-El v. Dretke*, 545 U.S. 231, 265 (2005), and when a state court's finding was "clearly erroneous," *Wiggins v. Smith*, 539 U.S. 510, 528-29 (2003); *see Landers v. Warden*, 776 F.3d 1288, 1294 (11th Cir. 2015).

AEDPA's requirements reflect a "presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 135 S. Ct. at 1376. This is especially true for claims of ineffective assistance of counsel,[3] where AEDPA review must be "doubly deferential" in order to afford "both the

---

[3]  To prevail on a claim of ineffective assistance of appellate counsel, a habeas petitioner must establish that his counsel's performance was deficient and that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Brooks v. Comm'r, Ala. Dep't of Corr.*, 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims of ineffective assistance of appellate counsel are governed by the same standards applied to trial counsel under *Strickland*.") (quot[es] omitted). Under the deficient performance prong, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

*Rambaran v. Sec'y, Dep't of Corr.*, 821 F.3d 1325, 1331 (11th Cir. 2016). Prejudice is shown if "'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Rivers v. United States*, 2016 WL 2646647 at * 1 (S.D. Ga. May 9, 2016) (quoting *Strickland*, 466 U.S. at 687). That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct., at 791.

state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. __, 134 S. Ct. 10, 13 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)).

Finally, sandbagging is prohibited. Petitioners must submit their claims to the state courts first. New claims advanced to a federal habeas court but not to the proper state court face dismissal on exhaustion, if not procedural default, grounds.

### B.    Appellate Counsel Was Not Ineffective

Lynch contends appellate counsel was ineffective for failing to raise on appeal his claim that (1) trial counsel deficiently failed to object to Confrontation Clause-violating testimony from the lead detective; and (2) trial counsel failed to object when the detective testified that the evidence pointed to Lynch. Doc. 1. These arguments were raised before, and addressed on the merits by, the state habeas court. *See* Doc. 8-2 (petitioner's brief to the state habeas court), 11-7 (state court decision denying habeas corpus relief), & 11-8 (Georgia Supreme Court's denial of application for certificate of probable cause).

### 1.    Confrontation Clause

The police found Marcus Givens lying in an alley suffering from

multiple gunshot wounds. He "appeared to be in serious pain, and his voice sounded gurgled," apparently due to blood in his lungs and throat. *Lynch*, 731 S.E.2d at 674. One of the responding officers asked for his name, and Givens responded "Reggie Lynch." *Id.* He clarified "Reggie Lynch, shot me" and repeated this statement at least three times before succumbing to his injuries. *Id.*, *see also id.* (one responding officer initially thought he said "Reggie Leck" because his voice was so garbled by his injuries). Lynch argued in his state petition that Givens' identification was "made while two police officers were responding to [his] shooting. There was no evidence presented at trial that there were any steps taken that indicate the police believed there was an ongoing emergency . . . [Givens'] statements to the police were therefore testimonial and should not have been admitted." Doc. 11-4 at 6-7; *see also* doc. 1 at 5 ("This statement was testimonial" and thus did not fall under a hearsay exception). That argument fails.

The state habeas court held that:

> [Appellate counsel] did not raise an issue about trial counsel's failure to object to the admission of the victim's dying declaration at the crime scene to two police officers. "At the scene, Detective Dantzler asked the victim for his name. The victim responded, 'Reggie Lynch.' Detective Dantzler initially thought that 'Reggie Lynch' was the victim's name, but the victim corrected, 'Reggie

Lynch, shot me.'" *Lynch*, *supra*, Division 1. A dying declaration such as the one given by the victim was admissible as an exception to the hearsay rule under the *res gestae* exception under former O.C.G.A. § 24-3-3. *Morgan v. State*, [564 S.E.2d 192, 224-25 (Ga. 2002) (a gunshot victim's deathbed identification of his shooter to a questioning officer, when he believes that he is about to die, falls under *either* the O.C.G.A. § 24-3-6 dying declaration hearsay exception or the former O.C.G.A. § 24-3-3 *res gestae* (spontaneous, contemporaneous statement) hearsay exception)]. Lynch contends, citing *Crawford v. Washington*, 125 S. Ct. 1354 (2004), that trial counsel should have objected on the ground that the dying declaration violated the Confrontation Clause. However, this court agrees with the warden, citing *Sanford v. State*, [695 S.E.2d 579, 583 (Ga. 2010) (inculpatory statements made several hours before death in response to police questioning admissible under both dying declaration and *res gestae* hearsay exceptions, where victim recognized the "dire nature of her injuries" and responded to queries "shortly after the shooting, in the midst of the chaos of the crime scene, and while awaiting emergency treatment.")], that the dying declaration was nontestimonial because the circumstances objectively indicate that the primary purpose of the interrogation by Detective Dantzler was to enable police assistance to meet an ongoing emergency. *Glover v. State*, [678 S.E.2d 476 (Ga. 2009)]. Accordingly, this trial court concludes that trial counsel did not perform deficiently by failing to make a Confrontation Clause objection and that appellate counsel did not perform deficiently by "winnowing out" an argument that there was a violation of the Confrontation Clause.

Doc. 11-7 at 2-3.

The state habeas court's rejection of Lynch's Confrontation Clause claim is perfectly consistent with, not an unreasonable application of, clearly established federal law as determined by the Supreme Court. In *Michigan v. Bryant*, 562 U.S. 344 (2011), the Court applied its

Confrontation Clause precedents to a set of facts almost identical to those presented by this case. There, as here, officers encountered a gun-shot victim in a public setting (there a gas station parking lot, here an alley) who appeared to be in great pain and who spoke only with difficulty. *Id.* at 348-49. The victim in *Bryant*, as in this case, identified the man who had shot him in response to the informal, on-scene questioning by the responding officers. In both *Bryant* and in this case the whereabouts of the armed perpetrator was unknown to the police. The *Bryant* Court concluded that because the circumstances surrounding the police-victim interaction "objectively indicate that the 'primary purpose of the interrogation' was 'to enable police assistance to meet an ongoing emergency,'" *id.* at 349, 377-78, *not* to gather evidence for trial, *id.* at 358, the victim's statements did not constitute "testimonial hearsay" that implicates the Sixth Amendment Confrontation Clause. *See id.* at 353-54 (the Sixth Amendment right to confront "the witnesses" against the defendant applies only to "testimonial statements" -- solemn declarations made for the purpose of establishing some fact for later use at trial -- not to "nontestimonial" statements made in response to police questioning whose chief purpose is to discover

"what is happening" during an emergency situation rather than "what happened" on a past occasion) (citations and internal quotations omitted).[4]  The concept of "ongoing emergency," the Court held, is not confined to the crime victim but also extends "to a potential threat to the responding police and the public at large."  *Id*. at 359, 363-64.  The question asked of the victim in *Bryant*, like those asked by the officers in this case, were designed not to elicit "testimony" for later use at trail but to enable the police to assess the situation and discern whether there was a continuing, ongoing danger to the community at large.[5]

But even if this Court were to find the victim's statements to be

---

[4]  In *Bryant*, the police asked the victim "'what had happened, who had shot him, and where the shooting had occurred.'"  562 U.S. at 349.  This questioning, the Michigan Supreme Court concluded, focused on establishing "the facts of an event that had *already* occurred . . . not to enable police assistance to meet an ongoing emergency."  *Id*. at 351 (citation omitted).  The United States Supreme Court disagreed, finding that the questions asked of the victim "were the exact type of questions necessary to allow the police to assess the situation, the threat to their own safety, and possible danger to the potential victim and to the public."  562 U.S. at 376 (cite and quote omitted).  In the present case, the police did not have to ask the victim what had happened or who had shot him, for he blurted out his assailant's name when first asked to identify himself.  Therefore, this is an even stronger case for finding that the "primary purpose" of the interrogation was to address an ongoing emergency than *Bryant* itself.

[5]  The *Bryant* court recognized that both the police and the declarant may have "mixed motives," for the purpose of the interrogation may be "*both* to respond to the emergency situation *and* to gather evidence" for later use at trial.  *Id*. at 368 (emphasis in original).  But where the *primary* purpose is to meet an ongoing emergency, the out-of-court statements are deemed to be nontestimonial and therefore beyond the scope of the Confrontation Clause.

testimonial in nature, the state habeas court's decision was nevertheless neither contrary to nor an unreasonable application of clearly established federal law. The Supreme Court has never held that dying declarations -- even if testimonial -- are subject to the Confrontation Clause. In fact, the Court has on more than one occasion suggested that dying declarations fall within one of two historical exceptions to the Sixth Amendment's bar against testimonial hearsay. *Bryant*, 562 U.S. at 351 n. 1 (noting that while it had not had the opportunity to rule definitively on the matter, its prior opinions "suggested that dying declarations, even if testimonial, might be admissible as a historical exception to the Confrontation Clause."); *Giles v. California*, 554 U.S. 353, 358-59 (2008) (recognizing as a historical exception to the Confrontation Clause the common law principle allowing the introduction of out-of-court testimonial statements from a witness whose absence the defendant wrongfully procured, and suggesting that the common law's allowance of unconfronted dying declarations constitutes a second such exception); *Crawford v. Washington*, 541 U.S. 36, 56 n. 6 (2004) (referencing the common law practice of allowing the admission of dying declarations as an exception to a defendant's confrontation right, but declining to decide

in that case whether the Sixth Amendment incorporated that historical exception). Many lower courts have also recognized that the Supreme Court has "hinted that dying declarations may fall within an exception to the constitutional bar against testimonial hearsay." *Walker v. Harry*, 462 F. App'x 543, 545-46 (6th Cir. Feb. 13, 2012); *see also Haynes v. Bergh*, 2014 WL 6871263 at * 22 (E.D. Mich. Dec. 5, 2014).

Clearly, the state habeas court was correct in finding that the failure of Lynch's counsel to raise a Confrontation Clause challenge to the victim's dying declaration was not offensive to any "clearly established" law as determined by the Supreme Court. Lynch is therefore not entitled to federal habeas relief on this claim. 28 U.S.C. § 2254(d)(1). Hence, trial counsel had no legal basis for imposing an objection to its admission, *see Jones v. Barnes*, 463 U.S. 745, 751 (1983) (there is no "constitutional right to compel appointed counsel to press nonfrivolous points"), and appellate counsel was not deficient for failing to raise a meritless argument that trial counsel was ineffective. *Strickland*, 466 U.S. at 687.

### ii.    Detective Tobar's Testimony

On direct examination, the prosecutor asked Detective Tobar:

Q  And based on your investigation -- based on your investigation, when you looked at the case and talked to the witnesses in regards to this case, it led -- who did your -- what did everything lead to, or who did everything lead to?

A  Reggie Lynch.

Q  And do you see Mr. Lynch here today?

A  He's right there, sitting with the blue shirt.

Doc. 11-3 at 91 (Trial Transcript Vol. II at 343). Trial counsel did not object to the question, but during his cross-examination of Tobar he elicited testimony about the two other suspects the State had investigated as potential perpetrators of the shooting. *Id.* at 92-101 (Trial Transcript Vol. II at 344-354).

In his state petition, Lynch argued that this exchange was "tantamount to testifying that [Lynch] is guilty," had "the effect of bolstering the state's witnesses because Tobar testified that the evidence and the witness only implicate Lynch," despite the fact that there was no physical evidence against Lynch and "Tobar had no knowledge of the case other than what he is repeating from other witnesses." Doc. 11-4 at 12-13. At the state habeas evidentiary hearing, appellate counsel conceded that such testimony was a conclusion that should have been left to the jury, and that he had missed the issue. Doc. 8-3 at 21 (State

Habeas Evid. H'g Vol. I at 19).  Petitioner seized upon this admission as proof appellate counsel was defective, doc. 11-4 at 13 ("Appellate counsel was deficient for not raising this issue.  He did not have [a] strategy because it was an issue he did not consider."), *see also* doc. 1 at 7, contending that the fact that his first trial ended in a hung jury demonstrates the evidence was not overwhelming and Tobar's improper testimony, as the final witness in the State's case-in-chief, was the figurative straw that broke the camel's back.  Doc. 11-4 at 13-14.  Hence, appellate counsel's failure to harp on Tobar's testimony cost him his appeal, meeting *Strickland*'s prejudice prong.  *Id.* at 14.

This argument is without merit.  As discussed by the state habeas court:

> Lynch alleges that appellate counsel was ineffective for failing to raise the issue that trial counsel failed to object to Detective Tobar's testimony that all of the evidence in the case led to Lynch being the shooter.  Trial counsel did not object to the prosecutor's question or Detective Tobar's response; rather counsel made a strategic decision to deal with the issue on cross examination.  On cross, trial counsel pointed out that the police investigated at least two other suspects in the course of their investigation, as well as inconsistencies in witness accounts of the shooting.  Without deciding whether counsel performed deficiently by failing to raise an issue about trial counsel's failure to object, this court does not believe that there is a reasonable probability that the outcome of the appeal would have been different had the issue been raised.  In other words, this court does not believe that the conviction would

have been reversed on appeal.

Doc. 11-7 at 3 (internal cites omitted).

That court therefore concluded that appellate counsel's performance -- *even if* deficient for failing to raise trial counsel's strategic decision to forgo objecting in lieu of addressing Tobar's testimony on cross-examination -- did not materially alter the outcome of the appeal. That conclusion was not an unreasonable application of the law or an unreasonable determination of the facts in light of the evidence available at trial. 28 U.S.C. §§ 2254(d)(1) & (2); *see also Strickland*, 466 U.S. at 694 (a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same).

Indeed, even if appellate counsel should have raised the issue, petitioner cannot demonstrate that the outcome of the appeal would have been any different. Detective Tobar's testimony that the evidence pointed to Lynch -- particularly after trial counsel's attempt on cross-examination to muster the slightest doubt that another shooter could have done the deed -- did not alone tip the scales, given the State's

overwhelming evidence of Lynch's guilt. *See Lynch*, 731 S.E.2d at 674 (statements by the victim that Lynch shot him and by a witness that Lynch told her he planned to kill the victim, the victim told her Lynch shot him, and that she saw Lynch drive away from the scene "was sufficient to enable the jury to find [him] guilty of the crimes for which he was convicted beyond a reasonable doubt.").

Because Lynch has shown no prejudice -- much less "clear and convincing evidence" of it, *see* 28 U.S.C. § 2254(e)(1); *Jones*, 834 F.3d at 1311 -- resulting from appellate counsel's oversight (of an argument that would have changed nothing about the outcome of his appeal), he has not demonstrated counsel was ineffective. *Strickland*, 466 U.S. at 687-88, 694; *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

## III. CONCLUSION

Reginald Lynch has failed to show that the state habeas court's denial of his ineffectiveness claims was contrary to, or unreasonably

applied, controlling United States Supreme Court precedent. *See* 28 U.S.C. § 2254(d). His claim of ineffective assistance of appellate counsel (doc. 1) is without merit and, accordingly, his § 2254 petition (doc. 1) should be **DENIED**. Applying the Certificate of Appealability ("COA") standards, which are set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Section 2555 Proceedings of the United States District Courts; *see Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (approving *sua sponte* denial of COA before movant filed a notice of appeal). And, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be **DENIED**. 28 U.S.C. § 1915(a)(3).

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned

"Objections to Magistrate Judge's Report and Recommendations."  Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to timely file objections will result in the waiver of rights on appeal.  11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __8th__ day of June, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA